**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

CROCS, INC.,

                   Plaintiff,

vs.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                   Defendants.
_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Crocs, Inc. ("Plaintiff" or "Crocs"), hereby sues Defendants, the Individuals,
Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively
"Defendants"). Defendants are promoting, selling, offering for sale, and distributing goods
within this district using counterfeits and confusingly similar imitations of Crocs's trademarks
through at least the fully interactive commercial Internet websites operating under the domain
names identified on Schedule "A" hereto (the "Subject Domain Names"). In support of its
claims, Crocs alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark counterfeiting and infringement, false
designation of origin, cybersquatting, common law unfair competition, and common law
trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d), The All
Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.  Accordingly, this Court has subject
matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and
1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Crocs's state

law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they operate commercial websites accessible in this district, conduct business by registering and maintaining the Subject Domain Names within the United States, and direct business activities toward consumers throughout the United States, including within the State of Florida, through at least the fully interactive commercial Internet websites operating under the Subject Domain Names.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

**THE PLAINTIFF**

4.      Crocs is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 13601 Via Varra, Broomfield, Colorado 80020. Crocs designs, manufactures, markets, and distributes footwear for men, women, and children, throughout the world, including within this district, under multiple world-famous common law and federally registered trademarks, including those identified in Paragraph 16 below.

5.      Crocs's goods are offered for sale and sold within the State of Florida, including this district, through various channels of trade, including its website, www.crocs.com. Defendants, through the advertising, sale, and offering for sale counterfeit and infringing versions of Crocs branded products, are directly, and unfairly, competing with Crocs's economic interests in the State of Florida and causing Crocs harm and damage within this jurisdiction.

6.     Like many other famous trademark owners, Crocs suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Crocs's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits.

7.     To combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Crocs expends significant monetary and other resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet has created an environment that requires companies, such as Crocs to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the adverse effects of confusion and erosion of the goodwill embodied in the Crocs brand.

## THE DEFENDANTS

8.     Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, partnerships, and/or business entities of unknown makeup, whom, upon information and belief, likely reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers within the United States. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities toward consumers throughout the United States, including within this district, through the operation of, at least, the fully interactive, commercial websites existing under the Subject Domain Names.

9.     Defendants use aliases in conjunction with the operation of their businesses, including, but not limited to, those identified on Schedule "A."

10.     Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit branded products as alleged herein, often as partners, co-conspirators and/or suppliers.

11.     Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit Crocs branded goods while shrinking the legitimate marketplace for genuine Crocs goods. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Crocs's famous name and associated trademarks, as well as the destruction of the legitimate market sector in which Crocs operates.

12.     Defendants are the past and/or present controlling forces behind the operation of the websites operating under, at least, the Subject Domain Names.

13.     Defendants directly engage in unfair competition with Crocs by (i) advertising, offering for sale and selling goods bearing counterfeits and infringements of one or more of Crocs's trademarks to consumers within the United States and this district through at least the fully interactive commercial websites and supporting Subject Domain Names as well as additional domains and websites not yet known to Crocs; and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Crocs's legitimate marketplace for its genuine goods. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit branded goods into the State, and by operating an illegal

marketplace enterprise which impacts and interferes with legitimate commerce throughout the United States, including within the State of Florida.

14.     Defendants have registered or purchased and maintained the Subject Domain Names, and the websites operating thereunder. Upon information and belief, many Defendants have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various registrars during the registration or maintenance process. Upon information and belief, Defendants have registered and/or maintained their Subject Domain Names for the sole purpose of engaging in unlawful infringing, counterfeiting, and phishing activities.

15.     Upon information and belief, Defendants have also established accounts and conducted advertising campaigns on social media platforms in order to drive traffic to their website operating under the Subject Domain Names.

16.     Defendants will likely continue to register or acquire new domain names and other aliases, as well as related payment accounts, for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of Crocs's trademarks unless preliminarily and permanently enjoined. Moreover, Defendants will likely continue to maintain and grow their illegal marketplace enterprise at Crocs's expense unless preliminarily and permanently enjoined.

17.     Defendants' website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Crocs.

18.     Defendants' business names, i.e., the Subject Domain Names, associated payment accounts, and any other domain names and aliases used in connection with the sale of counterfeit and infringing goods bearing one or more of Crocs's trademarks are essential components of

5

Defendants' unlawful activities and are one of the means by which Defendants further their scheme and cause harm to Crocs. Moreover, Defendants are using Crocs's famous name and trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Crocs's legitimate consumer marketplace at Crocs's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Trademark Rights

19.    Crocs is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Crocs Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| CROCS | 3,836,415 | August 24, 2010 | IC 025.Lightweight slip-resistant footwear. IC 035. Retail Internet catalog services featuring lightweight slip-resistant footwear. |
| CROCS LITTLES | 3,942,313 | April 5, 2011 | IC 025.  Footwear. |
| CROCS | 4,179,863 | July 24, 2012 | IC 009. [ knee pads for workers; ] sunglasses. IC 025. footwear. |
|  | 4,191,090 | August 14, 2012 | IC 025. Footwear [ ; clothing, namely, T-shirts; socks; hats; clothing, namely, shirts, pants, shorts, skirts, dresses, tank tops, sweatpants, hooded sweatshirts, swimsuits, bike jerseys, jackets, outerwear, leggings, but not including fashion clothing or collegiate line clothing ]. |
| ICONIC CROCS COMFORT | 5,034,761 | September 6, 2016 | IC 025. Footwear. |
| LITERIDE | 5,551,774 | August 28, 2018 | IC 017. Semi-processed closed cell polymer resin foam for use in the manufacture of footwear; Foam for use in the manufacture of footwear. IC 025. Footwear. |

The Crocs Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the Crocs Marks are attached hereto as Composite Exhibit "1."

20.    Before the Defendants began their infringing activities complained of herein, the Crocs Marks have been used by Crocs in interstate commerce to identify and distinguish Crocs's high-quality goods.

21.    The Crocs Marks have never been assigned or licensed to any of the Defendants in this matter.

22.    The Crocs Marks are symbols of Crocs's quality, reputation.

23.    Crocs expends substantial resources developing, advertising and otherwise promoting the Crocs Marks. Moreover, Crocs extensively uses, advertises, and promotes the Crocs Marks in the United States in association with the sale of high-quality goods and has carefully monitored and policed the use of the Crocs Marks.

24.    As a result of Crocs's efforts, members of the consuming public readily identify merchandise bearing or sold under the Crocs Marks as being high-quality goods sponsored and approved by Crocs. The Crocs Marks have achieved secondary meaning as identifiers of high-quality goods.

25.    Genuine goods bearing the Crocs Marks are widely legitimately advertised, promoted, and sold by Crocs and its authorized distributors. Over the course of the past ten years, visibility on the Internet has become increasingly important to Crocs's overall marketing and consumer education efforts. Thus, Crocs expends significant monetary resources on Internet marketing and consumer education strategies.  Those strategies allow Crocs and its authorized

retailers to educate consumers fairly and legitimately about the value associated with the Crocs brand and the goods sold thereunder.

**Defendants' Infringing Activities**

26.     Defendants are promoting, advertising, distributing, selling, and offering for sale goods in interstate commerce using counterfeits and confusingly similar imitations of one or more of the Crocs Marks (the "Counterfeit Goods") through at least the fully interactive, commercial websites operating under the Subject Domain Names. Specifically, Defendants are using the Crocs Marks to initially attract online consumers and drive them to Defendants' ecommerce stores operating under the Subject Domain Names.  Defendants are using identical copies of one or more of the Crocs Marks for different quality goods.

27.     Defendants' Counterfeit Goods are of a quality substantially different than that of Crocs's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Crocs, despite Defendants' knowledge that they are without authority to use the Crocs Marks.  Defendants' actions are likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods are genuine goods originating from, associated with, and/or approved by Crocs.

28.     Defendants advertise their ecommerce stores, including their Counterfeit Goods, to the consuming public via at least their websites operating under the Subject Domain Names. In so advertising their stores and products, Defendants improperly and unlawfully use one or more of the Crocs Marks without authority.

29.     Defendants are, upon information and belief, concurrently employing and benefiting from substantially similar, and often times coordinated, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of the Crocs Marks.  Specifically, Defendants are using counterfeits and infringements of Crocs's famous name and the Crocs Marks to make their websites selling illegal goods appear more relevant and attractive to consumers searching for Crocs's goods and information online. Defendants are causing, individual, concurrent, and indivisible harm to Crocs and the consuming public by (i) depriving Crocs of its right to fairly compete for space online and reducing the visibility of Crocs's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Crocs Marks, (iii) increasing Crocs's overall cost to market its goods and educate consumers about its brand via the Internet, and (iv) maintaining an illegal marketplace enterprise, which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Crocs with impunity.

30.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Crocs and the consuming public for Defendants' own benefit.

31.     At all times relevant hereto, Defendants in this action had full knowledge of Crocs's ownership of the Crocs Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

32.     Defendants' use of the Crocs Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Crocs's consent or authorization.

33.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Crocs's rights for the purpose of trading on Crocs's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Crocs and the consuming public will continue to be harmed.

34.     Additionally, at least the Subject Domain Name crocshoeus.com (the "Cybersquatted Subject Domain Name") is incorporating a mark that is identical to at least one of the Crocs Marks.

35.     Defendants do not have, nor have they ever had, the right or authority to use the Crocs Marks for any purpose.  Further, the Crocs Marks have never been assigned or licensed to be used on any of the Defendants' websites, including the website operating under the Cybersquatted Subject Domain Name.

36.     Upon information and belief, Defendants have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Name, or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Name.

37.     Defendants have never used the Cybersquatted Subject Domain Name in connection with a bona fide offering of goods or services.

38.     Defendants have not made any bona fide non-commercial or fair use of the Crocs Marks on a website accessible under the Cybersquatted Subject Domain Name.

39.     Defendants have intentionally incorporated at least one of the Crocs Marks in the Cybersquatted Subject Domain Name to divert consumers looking for Crocs's genuine website to one of their own websites for commercial gain.

40.     Given the similarity of their websites and actions, including their advertising and marketing activities, it is clear Defendants are either related, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Crocs and the overall consumer market in which it operates as a result of Defendants' concurrent actions.

41.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Crocs.

42.     Further, Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Subject Domain Names and any other alias seller names or domain names used or controlled by them.

43.     Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Crocs.

44.     Crocs has no adequate remedy at law.

45.     Crocs is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Crocs Marks.

46.     The harm and damages sustained by Crocs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance, and very existence of Defendants' illegal marketplace enterprise.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

47.     Crocs hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

48.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeits, copies, and/or colorable imitations of the Crocs Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

49.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of the Crocs Marks. Defendants are continuously infringing and inducing others to infringe the Crocs Marks by using one or more of them to advertise, promote, offer to sell, and sell counterfeit and infringing goods.

50.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

51.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Crocs and are unjustly enriching Defendants with profits at Crocs's expense.

52.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Crocs Marks in violation of Crocs's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

53.     Crocs has no adequate remedy at law. Crocs has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if

Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II - FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

54.     Crocs hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

55.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Crocs Marks have been widely advertised and offered for sale throughout the United States.

56.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Crocs Marks are virtually identical in appearance to Crocs's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among the consumingpublic as to at least the origin or sponsorship of their Counterfeit Goods.

57.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols, which to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Crocs's detriment.

58.     Defendants have authorized infringing uses of one or more of the Crocs Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

13

59.     Additionally, Defendants are using counterfeits and infringements of one or more of the Crocs Marks in order to unfairly compete with Crocs and others for space on the World Wide Web. The Defendants are thereby jointly (i) depriving Crocs of valuable marketing and educational space online which would otherwise be available to Crocs, and (ii) reducing the visibility of Crocs's genuine goods on the World Wide Web including across social media platforms.

60.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

61.     Crocs has no adequate remedy at law. Crocs has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING
PURSUANT TO §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))**

62.     Crocs hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

63.     At all times relevant hereto, Crocs has been and still is the owner of all rights, title and interest in and to the Crocs Marks.

64.     Defendants have acted with the bad faith intent to profit from the Crocs Marks and the goodwill associated therewith by the registration and maintenance of the Cybersquatted Subject Domain Name.

65.     The Crocs Marks were distinctive and famous at the time the Cybersquatted Subject Domain Name was registered.

66.     Defendants have no rights in or to the Crocs Marks.

67.     The Cybersquatted Subject Domain Name is identical to, confusingly similar to, and dilutive of at least one of the Crocs Marks.

68.     Defendants' registration and maintenance of the Cybersquatted Subject Domain Name was done with knowledge and constitutes a willful violation of Crocs's rights in the Crocs Marks.  At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Crocs's rights.

69.     Defendants' actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

70.     Crocs has no adequate remedy at law. Crocs has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

71.     Crocs hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

72.     This is an action against Defendants based on their (i) promotion, advertisement, distribution, sale and offering for sale of goods using or bearing marks that are virtually identical to the Crocs Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Crocs sells its genuine goods, in violation of Florida's common law of unfair competition.

73.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing counterfeits and infringements of one or more of

the Crocs Marks.  Defendants are also using counterfeits and infringements of one or more of the Crocs Marks to unfairly compete with Crocs and others for visibility on the World Wide Web.

74.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' ecommerce stores as a whole and all products sold therein.

75.     Crocs has no adequate remedy at law. Crocs has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

### COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

76.     Crocs hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 46 above.

77.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing one or more of the Crocs Marks.  Crocs is the owner of all common law rights in and to the Crocs Marks.

78.     Specifically, Defendants are promoting, and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of one or more of the Crocs Marks.

79.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Crocs Marks.

80.     Crocs has no adequate remedy at law. Crocs has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## PRAYER FOR RELIEF

81.     WHEREFORE, Crocs demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary restraining order, as well as preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Crocs Marks; from using the Crocs Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark, or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Crocs; from falsely representing themselves as being connected with Crocs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Crocs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Crocs Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or

representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Crocs, or in any way endorsed by Crocs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Crocs's name or trademarks; and from otherwise unfairly competing with Crocs.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Crocs Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Crocs's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of the Crocs Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Crocs to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Crocs Marks.

e.        Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Crocs's request, the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domains used by Defendants,  or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Crocs Marks, to the IP addresses where the associated websites are hosted.

f.        Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Crocs's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of the Crocs Marks at issue to Crocs's control so they may no longer be used for illegal purposes.

g.        Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, authorizing Crocs to request any Internet search engines who are provided with notice of the order, to permanently disable, de-index or delist all URLs of the Subject Domain Names used by Defendant to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Crocs Marks, based upon Defendants' unlawful activities being conducted via the Subject Domain Names as a whole.

h.        Entry of an order requiring each Defendant, its agent(s) or assign(s), to assign all rights, title, and interest, to its Subject Domain Name(s) to Crocs and, if within five (5) days of entry of such order any Defendant fails to make such an assignment, the Court order the

act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.     Entry of an order requiring each Defendant, its agent(s) or assign(s), to instruct all search engines to permanently delist or de-index the Subject Domain Name(s) and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.     Entry of an Order requiring Defendants to account to and pay Crocs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Crocs be trebled, as provided for under 15 U.S.C. §1117, or, at Crocs's election with respect to Count I, that Crocs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

k.     Entry of an order requiring Defendants to account to and pay Crocs for all profits and damages resulting from Defendants' cybersquatting activities and that the award to Crocs be trebled, as provided for under 15 U.S.C. §1117, or, at Crocs's election with respect to Count III, that Crocs be awarded statutory damages from Defendants in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

l.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Crocs's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

m. Entry of an Order that, upon Crocs's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, ecommerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Subject Domain Names, or other alias domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Crocs in partial satisfaction of the monetary judgment entered herein.

n. Entry of an award of pre-judgment interest on the judgment amount.

o. Entry of an order for any further relief as the Court may deem just and proper.

DATED: October 15, 2020. Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiff, Crocs, Inc.

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**